388 S.C. 39 (2010)
693 S.E.2d 430
David CARROLL, Appellant,
v.
SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY and South Carolina Department of Motor Vehicles, Defendants,
Of whom South Carolina Department of Motor Vehicles is the, Respondent.
No. 4678.
Court of Appeals of South Carolina.
Heard March 3, 2010.
Decided April 26, 2010.
A. Randolph Hough, of Columbia, and Heath P. Taylor, of West Columbia, for Appellant.
*40 General Counsel Frank L. Valenta, Jr., Deputy General Counsel Philip S. Porter, and Assistant General Counsel Linda A. Grice, all of Blythewood, for Respondent.
PER CURIAM:
David Carroll appeals an Administrative Law Court (ALC) order affirming his license suspension for registering an alcohol concentration of 0.15% or greater. Carroll argues the ALC erred in finding he was not prejudiced by the arresting officer's failure to advise him of his implied consent rights in writing as required by section 56-5-2950(B) of the South Carolina Code (Supp.2009). We affirm.

FACTS
On May 28, 2007, State Trooper Lance Corporal Stack received a "BOLO" (be on the lookout) alert for a grey-colored vehicle reportedly "all over the road." Trooper Stack was approaching a vehicle stopped on the shoulder of the road matching the description in the BOLO when the vehicle suddenly made a U-turn across two lanes of traffic to travel in the opposite direction. Trooper Stack turned on his blue lights and pulled the vehicle over. After noticing a strong odor of alcohol in the vehicle, he asked the driver, Carroll, to step out. Carroll's speech was slurred, and he seemed unsteady on his feet. Trooper Stack searched the vehicle and located an open container in the vehicle. He advised Carroll of his Miranda rights,[1] and Carroll stated he understood everything.
Another State Trooper, Lance Corporal Chance, arrived on the scene and advised Carroll that he was being videotaped and audio recorded. Trooper Chance informed Carroll he could refuse to take the field sobriety tests. He administered three standard field sobriety tests, all of which Carroll failed. Trooper Stack placed Carroll under arrest for driving under the influence (DUI) and transported Carroll to the Orangeburg County Law Enforcement Complex for a DataMaster blood alcohol concentration test (BAC test).
*41 Trooper Stack verbally advised Carroll of his implied consent rights by reading the advisement form to him. He checked Carroll's mouth for any foreign material and then waited the requisite twenty minutes before performing the BAC test. Carroll was undecided about whether to take the test or refuse it during the twenty minute waiting period. Trooper Stack asked Carroll to stand up and blow into the DataMaster machine and Carroll complied, after which he proceeded to perform three separate BAC tests. The first and second tests showed interference, but the third BAC test registered a blood alcohol level of 0.25%. Trooper Stack did not give Carroll his implied consent warning in writing until after all three tests were completed. Carroll signed the advisement of rights, along with his driver's license suspension, and copies of the BAC test reports.
Carroll requested an administrative hearing pursuant to section 56-5-2951(B)(2) of the South Carolina Code (Supp. 2009). During the hearing, Carroll stated he did not understand anything about the BAC testing process, and he "most likely would have refused" the BAC test if he had seen his implied consent rights in writing. However, on cross-examination, Carroll admitted he recalled informing Trooper Stack that he understood the verbal advisement of his implied consent rights. Carroll later explained that while he remembered telling Trooper Stack he understood, he did not truly understand the advisement of rights, and he was only agreeing with Trooper Stack at the time out of respect for Trooper Stack's rank.
After the hearing, the Department of Motor Vehicles (the Department) sustained Carroll's driver's license suspension, finding the BAC tests were administered in compliance with the implied consent statute. Carroll appealed, and the ALC affirmed the Department's decision. The ALC's order noted Carroll testified he understood his implied consent rights prior to testing, and Carroll subsequently signed a copy of the implied consent advisement of rights form. The ALC concluded Carroll was not prejudiced by the lack of written notice prior to testing. This appeal followed.

STANDARD OF REVIEW
Appellate review of an ALC order must be confined to the record. S.C.Code Ann. § 1-23-610(B) (Supp.2009). This *42 court may not substitute its judgment for that of the ALC as to the weight of the evidence on questions of fact. Id. This court may affirm the decision, remand the case for further proceedings, or "reverse or modify the decision if the substantive rights of the petitioner have been prejudiced. . . ." Id. The petitioner suffers prejudice when the ALC's finding, conclusion, or decision is:
(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) affected by other error of law;
(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Id.

LAW/ANALYSIS
Carroll argues the ALC erred in affirming his license suspicion based upon its determination that Carroll was not prejudiced by Trooper Stack's failure to advise Carroll of his implied consent rights in writing as required by section 56-5-2950(B) of the South Carolina Code (Supp.2009). We disagree.
South Carolina's Legislature has adopted an implied consent statute that provides:

No tests may be administered or samples obtained unless.. . prior to the commencement of the testing procedure, the person has been given a written copy of and verbally informed that:

(1) he does not have to take the test or give the samples, but that his privilege to drive must be suspended or denied for at least six months if he refuses to submit to the test and that his refusal may be used against him in court;
(2) his privilege to drive must be suspended for at least one month if he takes the test or gives the samples and has an alcohol concentration of fifteen one-hundredths of one percent or more;

*43 (3) he has the right to have a qualified person of his own choosing conduct additional independent tests at his expense;
(4) he has the right to request an administrative hearing within thirty days of the issuance of the notice of suspension; and
(5) if he does not request an administrative hearing or if his suspension is upheld at the administrative hearing, he must enroll in an Alcohol and Drug Safety Action Program.
S.C.Code Ann. § 56-5-2950(B) (Supp.2009) (emphasis added). Additionally, section 56-5-2950(J) provides that the failure to follow policies or procedures set forth in section 56-5-2950 will result in the exclusion from evidence of any tests results, "if the trial judge or hearing officer finds that this failure materially affected the accuracy or reliability of the test results or the fairness of the testing procedure. . . ." S.C.Code Ann. § 56-5-2950(J) (Supp.2009).
Our court examined a violation of the implied consent statute's "in writing" requirement in Taylor v. South Carolina Department of Motor Vehicles, 368 S.C. 33, 627 S.E.2d 751 (Ct.App.2006) (Taylor I). Taylor heard his implied consent rights but neither read nor signed the implied consent form. Id. at 35, 627 S.E.2d at 752. This court noted Taylor needed to demonstrate both a violation of the implied consent statute and prejudice in order to warrant relief. Id. at 38, 627 S.E.2d at 754. We held Taylor was not prejudiced because "Taylor does not argue that he did not receive the implied consent rights, or that he would have provided a blood test if he had received the implied consent rights in writing." Id.
Taylor appealed this court's decision to the South Carolina Supreme Court, which affirmed in Taylor v. South Carolina Department of Motor Vehicles, 382 S.C. 567, 677 S.E.2d 588 (2009) (Taylor II).[2] Our Supreme Court found nothing in the implied consent statute mandated re-issuance of a license for lack of procedural compliance with the statute. Id. at 569-70, 677 S.E.2d at 590. The Supreme Court noted the remedy provided in the implied consent statute for any lack of procedural compliance is exclusion of the test results from evidence, *44 and not reissuance of an individual's driver's license. Id. The Supreme Court then looked to section 56-5-2951 of the South Carolina Code (Supp.2009), the statute authorizing the Department to suspend a driver's license, and similarly concluded nothing in that statute mandates reissuance of a driver's license upon failure to procedurally comply with section 56-5-2950. Id. at 570-71, 677 S.E.2d at 590. Section 56-5-2951(F) provides:
An administrative hearing must be held after the request for the hearing is received by the Division of Motor Vehicle Hearings. The scope of the hearing is limited to whether the person:
(1) was lawfully arrested or detained;
(2) was given a written copy of and verbally informed of the rights enumerated in [s]ection 56-5-2950;
(3) refused to submit to a test pursuant to [s]ection 56-5-2950; or
(4) consented to taking a test pursuant to [s]ection 56-5-2950, and [several conditions relating to the administration of the test].
Thus, our Supreme Court held the "in writing" requirement was merely one of four factors to examine "with an eye toward prejudice" pursuant to section 56-5-2951(F). Taylor II, 382 S.C. at 571, 677 S.E.2d at 590. They further noted "[i]f the Legislature had intended the lack of written notice (or any other factor) to be a fatal defect, it could have said so in the statute." Id. at 570, 677 S.E.2d at 590 (citation omitted). The Supreme Court found this court "properly applied a prejudice analysis" and correctly found no prejudice resulted from the lack of written notice when Taylor was verbally advised of the implied consent warning. Id. at 571, 677 S.E.2d at 590.
We believe the case sub judice is distinguishable from Taylor I. Unlike Taylor, Carroll testified he likely would have refused the BAC test had he received his implied consent rights in writing, as required by section 56-5-2950(B). However, we defer to the ALC's factual findings regarding whether Carroll verbally received and understood his implied consent rights prior to testing. See S.C.Code Ann. § 1-23-610(B) (Supp.2009). We believe substantial evidence supported the ALC's conclusion that Carroll was not prejudiced by the lack *45 of written notice. See id. Furthermore, we are bound by our Supreme Court's holding in Taylor II, suggesting no prejudice resulted from the lack of written notice when an individual was verbally advised of his or her implied consent rights. See Taylor II, 382 S.C. at 571, 677 S.E.2d at 590 ("Given that it is undisputed Taylor was advised of the implied consent warning, the Court of Appeals properly found he suffered no prejudice from the officer's lack of written notice.").
Accordingly, we affirm the ALC's decision affirming Carroll's license suspension.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Our Supreme Court affirmed in a three-two split. Taylor II, 382 S.C. 567, 567-71, 677 S.E.2d 588, 589-91 (2009).